CITY LUMBER COMPANY, Inc., and Ira W. Yeary, Appellants,

v.

Billy R. BARRETT, Appellee.

Court of Appeals of Kentucky.

June 12, 1959.

Rehearing Denied Oct. 9, 1959.

Edwin R. Denney, Denney & Landrum, Lexington, for appellants.

. Calvert C. Little, London, for appellee

**CLAY, Commissioner.**

This is a suit to recover damages for a wrongful attachment, and upon submission to a jury, the plaintiff appellee Barrett was awarded approximately $9,500. This type of action is authorized by KRS 411.080. Appellant defendants' principal contention is that they were entitled to a directed verdict. (Since the parties' positions are reversed in the two suits involved, we will refer to the present plaintiff appellee as Barrett and the present defendant appellants as "Company".)

Barrett was a timber operator and the Company was in the lumber business. Barrett made a low bid of $8,297.50 on a boundary of timber in Jackson County owned by the federal government. Upon acceptance of the bid the purchaser was required to make an initial payment of $1,600, and pay the balance in installments of $1,600 over a period of time. Barrett was unable to make the initial payment, and entered into a written agreement with the Company whereby it would pay the purchase price. This contract is loosely drawn and does not specify with exactness the obligations of the parties. Barrett agreed to cut all the timber and to sell the pine and poplar to the Company at an agreed price. The contract provided that the Company should:

"Hold $20 per thousand out of each load, to apply to the mortgage second party also agrees to pay U. S. Forest Service the full amount of $8,297.50." (Barrett was the "second party")

It was also provided that out of any additional money obtained by Barrett by the sale of lumber to third parties the Company should be paid $20 per thousand "to be applied to the debt of U. S. Forest Service." The contract concluded, "it is understood that $8,297.50 cover the mortgage and the entire debt".

The contract made no provision for the payment by the Company to the federal government, but the parties seem to agree that it would make the installment pay-

ments. (There was no mortgage, though mentioned in the contract.)

The Company made three payments of $1,600 to the federal government and had given Barrett credit for approximately this amount out of the timber cut. When the fourth payment fell due the Company called on Barrett to put up sufficient money to pay it. This he declined to do. The Company then checked into Barrett's operation. It discovered that he was indebted to some of his employees, was behind in payments on his equipment, and had sold timber to third parties for which he had not made an accounting of $20 per thousand to the Company. Suit was then filed against Barrett, and his equipment was attached. Four days later the Company paid the next installment of $1,600, and eventually the Company wound up with the remaining timber, Barrett being unable to pay out on the original purchase price.

Three weeks after the attachment suit was brought, the parties entered into an agreed order appointing a receiver to carry on the timber operation. They agreed to the appointment of one Lear as receiver, and the order provided that the receiver would sell timber and lumber and "apply the proceeds as follows: $12 per thousand to the City Lumber Company to extinguish the debt and lien they have not to exceed $3,118.45". (The latter figure was the balance due on the original purchase price for which the Company had not been reimbursed.)

The operation was carried on by the receiver for a short time at a loss, and he resigned. Subsequently the Company, after paying all the costs of receivership, dismissed the suit, no order sustaining the attachment having been entered.

█ The basis of Barrett's cause of action is (1) he did not owe the Company any money when the attachment suit was brought; (2) if he was indebted to the Company he had sufficient unencumbered property to satisfy the claim. He therefore asserts that the attachment proceeding was wrongful and was initiated in bad faith to squeeze him out of the timber operation. The fundamental issue in this case is whether or not, as provided by KRS 411.080, Barrett's property was attached "without good cause". (The plaintiff is not required to allege or prove malice.)

█ It has been recognized that an attachment suit is wrongful if the defendant is not indebted to the plaintiff. 5 Am.Jur., Attachment and Garnishment, Section 984 (page 190). At the time the suit was filed, the Company had not actually advanced more on the purchase price than Barrett had been given credit for. If there was some question about this, it was a matter for the jury to determine.

Another fact issue was presented as to whether the Company had good reason to believe that Barrett was about to dispose of his property with fraudulent intent or had insufficient property to satisfy the Company's just demand. In view of the foregoing issues of fact, the Company was not entitled to a directed verdict.

█ The Company contends that the agreed order appointing a receiver in the original suit constituted a judicial admission by Barrett of his indebtedness and a justification of the attachment. However, while this order did refer to a "debt and lien", in the amount of approximately $3,000, the agreement was entered into "to dispose of the above entitled action for the time being". The obvious purpose of this agreement was to permit the continuation of timber operations which the Company's attachment had held up. In no sense is it an acknowledgment by Barrett that the attachment was justified.

█ The Company also contends that the advice of counsel constituted a complete defense to this action. The proof on this is not very satisfactory as it appears such advice was obtained after the suit was filed. There is also a question as to whether or not a full and true disclosure of the facts

had been made to the attorney. We do not think the proof establishes such a disclosure and advice of counsel as would constitute an absolute bar to a proceeding of this nature.

■ In addition, this is not a common law action for malicious prosecution wherein the rule may be invoked. See Harter v. Lewis Stores, Inc., Ky., 240 S.W.2d 86. Where malice is not an element of the cause of action, advice of counsel is not a defense as a matter of law. 5 Am.Jur., Attachment and Garnishment, § 998 (page 200); 7 C.J. S. Attachment § 540, page 673. KRS 411.-080 specifically provides that the plaintiff is not required to allege or prove malice.

The Company contends that certain incompetent testimony was admitted over its objection. This principally involved proof of damages, and the witnesses were qualified to express their opinion with respect to the rental value of specific equipment.

The Company also objects to the action of the trial court in excusing one of the jurors after he had been sworn in. We find neither error nor prejudice in this aspect of the trial.

The judgment is affirmed.